IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MELODY G. CAMERON,                              08-CV-6140-BR

          Plaintiff,                            OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

          Defendant.


KATHRYN TASSINARI
ROBERT A. BARON
Harder Wells Baron & Manning, P.C.
474 Willamette St., Suite 200
Eugene, OR  97401
(541) 343-4527

          Attorneys for Plaintiff


1 - OPINION AND ORDER

**KARIN J. IMMERGUT**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204
(503) 727-1053

**DAVID MORADO**
Office of the General Counsel
**DAVID M. BLUME**
**STEPHANIE R. MARTZ**
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2212

       Attorneys for Defendant

**BROWN, Judge.**

      Plaintiff Melody G. Cameron seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) and found Plaintiff ineligible for Supplemental Security Income (SSI) payments under Titles II and XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

      Following a thorough review of the record, the Court **AFFIRMS** the Commissioner's final decision.

2 - OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Plaintiff filed her most recent applications for DIB and SSI on April 26, 2005, alleging an onset date of March 9, 2005. Tr. 85-98, 121-30.[1]  The applications were denied initially and on reconsideration.  Tr. 85-98, 100-05.  An Administrative Law Judge (ALJ) held a hearing on September 14, 2007.  Tr. 16, 30. At the hearing, Plaintiff was represented by an attorney. Plaintiff and a vocational expert (VE) testified.

The ALJ issued an opinion on September 28, 2007, in which she found Plaintiff is not disabled and, therefore, is not entitled to benefits.  That decision became the final decision of the Commissioner on March 7, 2008, when the Appeals Council denied Plaintiff's request for review.

## BACKGROUND

Plaintiff was 37 years old at the time of the hearing. Tr. 35.  She has a high-school education.  Tr. 35.  Plaintiff has previously worked as a hostess, convenience clerk, and home health aide.  Tr. 40.

Except when noted below, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After reviewing the medical records, this Court adopts the ALJ's summary of the

---

[1] Citations to the official transcript of record filed by the Commissioner on October 29, 2008, are referred to as "Tr."

medical evidence.  *See* Tr. 19-22.

**<u>STANDARDS</u>**

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility,

resolving conflicts in the medical evidence, and resolving
ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.
2001).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Robbins,*
466 F.3d at 882.  The Commissioner's decision must be upheld even
if the evidence is susceptible to more than one rational
interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir.
2005).  The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).


## DISABILITY ANALYSIS

### The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.
2007).  *See also* 20 C.F.R. §§ 404.1520, 416.920.  Each step is
potentially dispositive.

In Step One, the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*,
454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

In Step Two, the claimant is not disabled if the

Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  *Stout*, 454 F.3d
at 1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii),
416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of a
number of listed impairments that the Commissioner acknow-
ledges are so severe as to preclude substantial gainful
activity.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R.
§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  The criteria for
the listed impairments, known as Listings, are enumerated in
20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must
determine the claimant's residual functional capacity (RFC),
which "is an assessment of the sustained, work-related physical
and mental activities" that the claimant can still do "on a
regular and continuing basis" despite his limitations.  20 C.F.R.
§ 404.1520(e).  *See also* Soc. Sec. Ruling (SSR) 96-8p.  A
'regular and continuing basis' means 8 hours a day, for 5 days a
week, or an equivalent schedule."  SSR 96-8p, at *1.  In other
words, the Social Security Act does not require complete
incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284
n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at
the heart of Steps Four and Five of the sequential analysis

engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One, the ALJ found Plaintiff has not engaged in any

7 - OPINION AND ORDER

substantial gainful activity since her alleged onset date of
March 9, 2005.  Tr. 18.

At Step Two, the ALJ found Plaintiff has the severe
impairment of degenerative disc disease.  Tr. 19.

At Step Three, the ALJ found Plaintiff does not have an
impairment or a combination of impairments that meets or equals a
Listing.  Tr. 22.  The ALJ assessed Plaintiff's RFC and found she
can perform a reduced range of light exertional work.  Tr. 22.
The ALJ also found Plaintiff can lift 20 pounds occasionally and
10 pounds frequently; can stand or walk for six hours in an
eight-hour workday; can sit for approximately eight hours in an
eight-hour workday; must change position every 30 minutes; cannot
climb ladders, ropes, or scaffolding; and can occasionally
crouch, crawl, stoop, kneel, bend, balance, climb stairs, or
reach overhead.  Tr. 22.

At Step Four, the ALJ found Plaintiff does not have any past
relevant work.  Tr. 25.

At Step Five, the ALJ found Plaintiff is able to perform
jobs that exist in significant numbers in the national economy.
Tr. 26.  The ALJ identified four examples of such work drawn from
the testimony of the VE:  information clerk, nongovernment mail
sorter, office helper, and linen-room attendant.  Tr. 26.  Thus,
the ALJ concluded Plaintiff is not disabled and, therefore, is
not entitled to benefits.

## DISCUSSION

Plaintiff contends the ALJ erred when she (1) found Plaintiff does not have the medically determinable impairment of fibromyalgia, (2) found Plaintiff's testimony was not entirely credible, and (3) rejected the opinion of Plaintiff's treating physician, Lyle R. Torguson, M.D., as to Plaintiff's limitations.

**I.   The ALJ did not err when she found Plaintiff does not have the medically determinable impairment of fibromyalgia.**

Plaintiff contends the ALJ erred when she found Plaintiff does not have the medically determinable impairment of fibromyalgia.

In an April 14, 2006, chart note, Dr. Torguson noted Plaintiff reported she suffered from fibromyalgia.  Tr. 340. Dr. Torguson also stated in a December 6, 2006, letter to Plaintiff's attorney that Plaintiff "had been diagnosed with fibromyalgia many years ago."  Tr. 384.

As noted, a claimant is not disabled at Step Two if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).  *See also Ukolov*, 420 F.3d at 1003.  The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."

9 - OPINION AND ORDER

20 C.F.R. §§ 404.1521(a), (b).  Such abilities and aptitudes
include walking, standing, sitting, lifting, pushing, pulling,
reaching, carrying, handling, seeing, hearing, speaking;
understanding, carrying out, and remembering simple instructions;
using judgment; responding appropriately to supervision, co-
workers, and usual work situations; and dealing with changes in a
routine work setting.  *Id.*

    The Step Two threshold is low.  "[A]n impairment can be
considered as not severe only if it is a slight abnormality which
has such a minimal effect on the individual that it would not be
expected to interfere with the individual's ability to
work . . . .  [T]he severity regulation is to do no more than
allow the Secretary to deny benefits summarily to those
applicants with impairments of a minimal nature which could never
prevent a person from working."  SSR 85-28, at *2 (Nov. 30,
1984)(internal quotations omitted).  The Ninth Circuit describes
Step Two as a "*de minimus* screening device to dispose of
groundless claims."  *Smolen*, 80 F.3d at 1290.  *See also Webb v.
Barnhart*, 433 F.3d 683, 686-88 (9th Cir. 2005).  "Great care
should be exercised in applying the not severe impairment
concept."  SSR 85-28, at *4.

    Only acceptable medical sources can establish medically
determinable impairments.  SSR 06-03p provides:

        Information from [nonacceptable medical
        sources] cannot establish the existence of a

> medically determinable impairment.  Instead,
> there must be evidence from an "acceptable
> medical source" for this purpose.

See also 20 C.F.R. § 404.1513(a)(Commissioner needs "evidence

from acceptable medical sources to establish whether [a claimant

has] a medically determinable impairment.").  Medical sources are

divided into two categories:  "acceptable" and "not acceptable."

20 C.F.R. § 416.902.  Acceptable medical sources include licensed

physicians and psychologists.  20 C.F.R. § 416.902.  Medical

sources classified as "not acceptable" include, but are not

limited to, nurse practitioners, therapists, licensed clinical

social workers, and chiropractors.  SSR 06-03p, at *2.  Although

the claimant has the burden at Step Two to prove she is disabled,

the ALJ must consider "impairment[s]. . . [alleged by the

claimant] or about which we receive evidence" in the form of

medical records.  20 C.F.R. § 1512(a).

Here the ALJ concluded Plaintiff does not have the medically

determinable impairment of fibromyalgia because she has not been

diagnosed with fibromyalgia.  Tr. 21.  The ALJ's conclusion is

supported by the medical record.  For example, Dr. Torguson's

April 14, 2006, chart note regarding fibromyalgia is based on

Plaintiff's subjective report.  Tr. 340.  Although Dr. Torguson

also stated in his December 19, 2006, letter to Plaintiff's

counsel that the alleged diagnosis of fibromyalgia was made

before he began treating Plaintiff, there is not any evidence in

the record that Plaintiff has ever been diagnosed with or treated
for fibromyalgia during the relevant period.  In fact, Plaintiff
testified at the hearing that she did not know who diagnosed her
with fibromyalgia.  Tr. 35.

On this record, the Court concludes the ALJ did not err when
she found Plaintiff does not have the medically determinable
impairment of fibromyalgia because the ALJ provided legally
sufficient reasons supported by substantial evidence in the
record for doing so.

## II.  The ALJ did not err when she found Plaintiff's testimony was not entirely credible.

Plaintiff contends the ALJ erred when she found Plaintiff's
testimony was not entirely credible.

Plaintiff completed a Claimant Pain Questionnaire on
June 16, 2005, in which she stated she experiences aching,
burning, and seizing pain in her lower back and hips on a daily
basis.  Tr. 174.  According to Plaintiff, her pain is caused by
bending, stooping, standing, sitting, walking, and lying down.
Tr. 174.  Plaintiff stated her pain is improved by taking
ibuprofen, Flexeril, Vicodin, Tylenol PM, and medical marijuana.
Tr. 174.  Plaintiff stated she can be active for about 15 minutes
before she must rest and has difficulty finishing tasks such as
vacuuming, doing laundry, doing dishes, and cleaning.  Tr. 175.
She can occasionally take short walks.  Tr. 175.

Plaintiff also testified at the hearing that she cares for

12 - OPINION AND ORDER

her diabetic mother for about two hours each day for five days each week, which includes making her mother's appointments with doctors, giving medications to her mother, paying her mother's bills, and doing her mother's grocery shopping. Tr. 37. Plaintiff's sons assist Plaintiff when she does her mother's grocery shopping because she cannot lift bags of groceries or jugs of water. Tr. 37, 43. About once or twice each month, other family members step in when Plaintiff is unable to care for her mother. Tr. 38. Plaintiff does not cook, clean, or do dishes at her mother's home. Tr. 44.

Plaintiff testified she does most of the cooking for her family, but about twice each month she gets take out or makes microwave dinners because she is unable to cook. Tr. 45. Plaintiff stated her pain interferes with her sleep, but she can sleep for six hours if she takes a Tylenol PM. Tr. 47. Plaintiff also testified she sometimes drives, but other times her sons drive her. Tr. 51. In addition, Plaintiff stated she cannot always walk the 500 yards to her mother's home. Tr. 51.

Plaintiff also testified her pain "flares up" a few times a week, which requires her to lie down and rest or to take a hot shower. Tr. 43-44, 46. The pain manifests as "pinches" in her lower back, pain down both legs, and numbness down her right leg. Tr. 45-46. Plaintiff stated she has had to stay in bed because of the pain for as long as a week. Tr. 46. Plaintiff also

testified she lies down or reclines for about four hours each
day.  Tr. 49.  Sometimes she has difficulty navigating stairs.
Tr. 51.  Plaintiff testified her pain makes her irritable.
Tr. 61-62.

Plaintiff stated Vicodin and Flexeril relieve her pain, but
she is allergic to other pain medications.  Tr. 39-40.  The
Vicodin causes itching, which she controls with Benadryl.
Plaintiff also reported she is not currently taking any pain
medication because Dr. Torguson will not refill her prescription
without seeing her, which she stated she cannot afford.
Tr. 39-40.  Plaintiff also has used medical marijuana, but
recently she has been unable to afford it.  Tr. 35, 39.
Plaintiff does not currently have any health-insurance coverage.
Tr. 37.

In *Cotton v. Bowen,* the Ninth Circuit established two
requirements for a claimant to present credible symptom
testimony:  The claimant must produce objective medical evidence
of an impairment or impairments, and she must show the impairment
or combination of impairments could reasonably be expected to
produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir.
1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir.
1991).  The claimant, however, need not produce objective medical
evidence of the actual symptoms or their severity.  *Smolen*, 80
F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient. *Id.*  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834).

Here the ALJ found Plaintiff has the severe impairment of degenerative disc disease  Tr. 19.  The ALJ also acknowledged this impairment could be expected to cause some symptoms. Tr. 23.  In addition, J. Scott Pritchard, M.D., and Sharon B. Eder, M.D., the Disability Determination Services[2] (DDS) physicians who examined Plaintiff, concluded some degree of symptoms could be caused by her impairment.  Tr. 276-83, 326-33. Accordingly, the Court finds Plaintiff has satisfied the first two prongs of the *Cotton* test by providing evidence of an impairment that could reasonably cause her to produce some degree of symptom.  799 F.2d at 1407.  Because the ALJ did not determine

---

[2] Disability Determination Services (DDS) is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

Plaintiff is malingering, the ALJ must provide clear and
convincing reasons for rejecting Plaintiff's testimony.  *Lester*,
81 F.3d at 834.

The ALJ found Plaintiff was not entirely credible because,
among other things, her allegations of pain are not consistent
with her minimal use of pain medication.  Tr. 23-24.  As noted by
Dr. Torguson on March 21, 2006, and on May 16, 2007, and by
Plaintiff at the hearing, she uses only over-the-counter pain
medication such as Tylenol.  Tr. 39-40, 343.  The use of minimal
pain medication is a legally sufficient ground for the ALJ to
discredit Plaintiff's symptom testimony.  *Smolen*, 80 F.3d at
1284.  *See also Bunnell*, 947 at 346.  When a claimant provides a
good reason for not taking medication or seeking treatment, such
as lack of insurance or money to cover medical costs, her symptom
testimony may not be rejected for that conduct.  *Id*.  Here,
however, Plaintiff stated she could not afford her Vicodin
refills because she could not afford to see Dr. Torguson each
time she needed a refill, which he required of her.  There is not
any evidence in the record that Dr. Torguson required Plaintiff
to make an office visit each time she needed a refill, however.
Dr. Torguson stated in a December 6, 2006, chart note, eight
months since Plaintiff's previous visit on April 14, 2006, that
if Plaintiff wished to use Vicodin on a regular basis, she would
be required sign a narcotic contract and also would need see him

16 - OPINION AND ORDER

"more frequently."  Tr. 9.

On this record, the Court concludes the ALJ did not err when she found Plaintiff's testimony was not entirely credible because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**III. The ALJ did not err when she rejected the opinion of Dr. Torguson.**

Plaintiff contends the ALJ erred when she rejected the opinion of Dr. Torguson as to Plaintiff's limitations.

In a December 6, 2006, chart note, Dr. Torguson stated Plaintiff has balance and vision problems.  Tr. 9.  In addition, he reported she was only capable of performing two to three hours of sedentary work per week, and working for any longer would "knock her out" for five days.  Tr. 9.  Dr. Torguson also opined Plaintiff cannot stay in one position, either sitting or standing, for any length of time.  Tr. 9.

On December 19, 2006, Dr. Torguson completed a questionnaire prepared by Plaintiff's attorney in which Dr. Torguson opined Plaintiff was unable to perform either light or sedentary work on a sustained basis.  Tr. 385.  Dr. Torguson also opined Plaintiff's impairments would cause her to miss more than two days per month of work.  Tr. 386.  On December 19, 2006, Dr. Torguson opined Plaintiff can lift five pounds occasionally, can stand or walk for two hours in an eight-hour workday, can sit, and can perform limited pushing and pulling.  Tr. 387.  In

addition, Dr. Torguson stated Plaintiff would need breaks about
every 15 minutes and must alternate between sitting, standing,
and lying flat.  Tr. 387.  In addition, he stated Plaintiff is
precluded from work that requires balancing, kneeling, or
crouching.  Tr. 387.

An ALJ may reject an examining or treating physician's
opinion when it is inconsistent with the opinions of other
treating or examining physicians if the ALJ makes "findings
setting forth specific, legitimate reasons for doing so that are
based on substantial evidence in the record."  *Thomas*, 278 F.3d
at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.
1989)).  When the medical opinion of an examining or treating
physician is uncontroverted, however, the ALJ must give "clear
and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at
957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32.

A nonexamining physician is one who neither examines nor
treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a
nonexamining physician cannot by itself constitute substantial
evidence that justifies the rejection of the opinion of either an
examining physician or a treating physician."  *Id.* at 831.  When
a nonexamining physician's opinion contradicts an examining
physician's opinion and the ALJ gives greater weight to the
nonexamining physician's opinion, the ALJ must articulate his
reasons for doing so.  *See, e.g., Morgan v. Comm'r of Soc. Sec.*

*Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

The ALJ rejected Dr. Torguson's opinion as to Plaintiff's limitations on the ground that it was based almost entirely on her subjective complaints.  "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)(quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)).  Dr. Torguson only saw Plaintiff four times, and the record reflects his findings as to Plaintiff's limitations are based mainly on Plaintiff's reports of her symptoms, which the ALJ properly found were not entirely credible.  Tr. 7, 9, 340, 343.  In addition, the minimal objective testing performed by Dr. Torguson is inconsistent with his assessment of Plaintiff's limitations.  Tr. 7, 9, 340, 343. For example, Dr. Torguson's notes reflect negative leg lifts and reflexes on March 21, 2006, but on May 16, 2007, Dr. Torguson reported Plaintiff's leg lifts, deep tendon reflexes, and motor strength were all normal.  Tr. 7.

The ALJ also rejected Dr. Torguson's opinion as to Plaintiff's limitations on the ground that it was based in part on Plaintiff's self-reporting that she suffered from the

19 - OPINION AND ORDER

medically determinable impairment of fibromyalgia.  Tr. 24.  As noted, the ALJ properly found the record does not reflect that Plaintiff has the medically determinable impairment of fibromyalgia.

On this record, the Court concludes the ALJ did not err when she rejected the opinion of Dr. Torguson as to Plaintiff's limitations because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 8th day of July, 2009.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

20 - OPINION AND ORDER